Christopher P. Burke, Esq.  
Nevada Bar No. 004093  
atty@cburke.lvcoxmail.com  
218 S. Maryland Parkway  
Las Vegas NV 89101  
(702) 385-7987  
Attorney for Plaintiff  
Kim Vanamann

ECF Filed on 6/27/2016

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| KIM VANAMANN, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC,<br><br>Defendant. | CASE NO.: 2:15-cv-00906-KJD-NJK<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

The Plaintiff Kim Vanamann (Vanamann) contends that the Defendant Nationstar Mortgage LLC (Nationstar) willfully violated the FCRA by pulling her private credit information and credit scores when Nationstar did not have a "permissible purpose" or "certify a permissible purpose" as required by the Fair Credit Reporting Act ("FCRA"). [1]

Nationstar now moves to dismiss her action claiming that wrongfully obtaining her report is a "procedural technicality" under the FCRA. In other words, that the FCRA

---

[1] Plaintiff has previously filed her opposition to Nationstar's Motion for Summary Judgment that sets forth that Nationstar's contract for obtaining credit information was limited to a single alleged permissible purpose but none of the permissible purposes raised by Nationstar. See Vanamann's Opposition, Doc. 48 at 1.B-D, pages 3-10, Exhibit 1 and 2. The FCRA requires a certification of the permissible purpose. 15 U.S.C.A. § 1681b(f). Nationstar cannot show that it certified the alleged permissible purposes it has raised in this action. The single basis identified in Nationstar's contract does not apply to the Plaintiff's account. See Doc. 48 at 1.B. Vanamann incorporates by reference her opposition.

requirements that one must have and certify a permissible purpose before one is allowed to obtain another person's confidential information, is nothing more than a "procedural requirement." In the process, Nationstar tries to reframe the issue as if Vanamann must show Nationstar did not meet any possible permissible purpose when the FCRA requires Nationstar to have a permissible purpose.

Respectfully, far from being "procedural" Nationstar's alleged violation of 15 U.S.C. §1681b(a) results in a classic form of cognizable harm: invasion of privacy. And, Nationstar must show a permissible purpose.

I.  THE FACTS ALLEGED IN THE COMPLAINT.

Plaintiff makes the following allegations in her complaint:

On December 22, 2009 Vanamann filed a bankruptcy proceeding under Title 11 before the United States Bankruptcy Court for the District of Nevada. Complaint, ¶ 7.

Prior to the bankruptcy filing, the Plaintiff had a credit relationship with the Defendant as a result of a mortgage debt. Complaint, ¶ 8.

As a result of the bankruptcy proceeding, on May 1, 2013 Vanamann was granted a discharge of her in personam liability for debts, including any debt owed to Nationstar.

There was no other in personam relationship established or created between Vanamann and Nationstar after Vanamann filed her bankruptcy. Complaint, ¶ 9.

Nationstar knew of Vanamann's bankruptcy filing and the grant of a discharge. Complaint, ¶ 10.

Despite the discharge and the absence of any in personam credit relationship between Vanamann and Nationstar, Nationstar accessed Vanamann's personal information after the discharge by pulling or obtaining a consumer report from a consumer reporting agency on July 31, 2014. Complaint, ¶ 11.

Vanamann had not requested credit from the Defendant, nor was it a replacement for any other credit Vanamann had. Complaint, ¶ 12.

Vanamann had not authorized Nationstar access to her private credit report or information. Complaint, ¶ 13.

Defendant obtained or "pulled" the consumer report of Vanamann and the members of the class without written permission or a "permissible purpose". Complaint, ¶ 30.

To obtain the consumer report of Vanamann or the class members, the Defendant had to affirmatively certify that it had either written consent or a permissible purpose. Complaint, ¶ 31.

The Defendant knew that it did not have either written consent or a permissible purpose. Complaint, ¶ 32.

The Defendant obtained information about Vanamann and the class members under false pretenses since the Defendant did not have a permissible purpose or written permission. Complaint, ¶ 34.

The Defendant's actions support an award of punitive damages since they acted knowingly when they accessed reports without a permissible purpose and made false certifications to pull or obtain the private information of the Plaintiff and class members. Complaint, ¶ 35.

Under these facts, Plaintiff has stated an injury in fact meeting both the particularization and concrete components.

II. THE HISTORY AND SCOPE OF THE FCRA'S PROTECTION OF PRIVACY.

Congress made a determination when it passed the FCRA that the information within a consumer report should only be disseminated and used for specific purposes. In his opening statement, when the lead Senate sponsor, William Proxmire, chaired the hearings on the bill that would become the FCRA, he explained:

> The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; *he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy*. The Fair Credit Reporting Act seeks to secure these rights."

Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969) (emphasis added).

Senator Proxmire also stated:

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

> The fact that credit reporting agencies maintain files on millions of Americans, including their employment, income, bill paying record, marital status, habits, character and morals is not in and of itself so disturbing. What is disturbing is that this practice will continue, and will have to continue, if we continue to have an insurance system and a consumer credit system of the kind we have. What is disturbing is the lack of any public standards to ensure that the information is kept confidential and used only for its intended purpose. The growing accessibility of this information through computer- and data-transmission techniques makes the problem of confidentiality even more important.

115 Cong. Rec. 2413 (1969).

Thus, impermissible access or use of a consumer report presents a very real and immediate concrete harm to the privacy interests of the individual consumer whose report has been accessed.

When Congress enacted the FCRA it included the protection of privacy as a specific goal:

> (4) There is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 USCA § 1681 (a)

To accomplish this purpose, Congress limited access to a consumer report:

> Subject to subsection (c) of this section, any consumer reporting agency may furnish a consumer report under the following circumstances and no other:

15 USCA § 1681b(a).

The United States Supreme Court explained in *TRW Inc. v. Andrews*, 122 S.Ct. 441, 444-45, 534 U.S. 19, 23 (2001):

> Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system <u>and to protect consumer privacy</u>. See 15 U.S.C. § 1681(a) (1994 ed.). As relevant here, the Act seeks to accomplish those goals by requiring credit reporting agencies to maintain "reasonable procedures" designed "to assure maximum possible accuracy of the information" contained in credit reports, § 1681e(b), <u>and to "limit the furnishing of [such reports] to" certain statutorily enumerated purposes, § 1681e(a); 15 U.S.C. § 1681b</u> (1994 ed. and Supp. V). The Act creates a private right of action allowing injured consumers to recover "any actual damages" caused by negligent violations and both actual and punitive damages for willful noncompliance. See 15 U.S.C. §§ 1681n, 1681*o* (1994 ed.).

(emphasis added)

Claims for accessing or using a consumer report without a permissible purpose are classic invasion of privacy claims. Obtaining a report without a permissible purpose constitutes an invasion of a legally protected interest in the confidentiality of the consumer's sensitive personal information. The harm may be intangible, but it is very real and concrete.

Not surprisingly because an impermissible pull violates the law and is a concrete injury in fact, the FCRA also specifically provides a remedy for an impermissible pull of someone's credit setting damages:

> (a) Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--
>
> (1) (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;

15 USCA § 1681n

Congress also allowed for the imposition of punitive damages and attorney fees:

> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 USCA § 1681n(a)

In fact, Congress was so concerned with protecting consumers' privacy against impermissible pulls, it enacted a criminal penalty specifically addressing wrongfully obtaining a person's private credit information under false pretenses:

> Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be fined under title 18, imprisoned for not more than 2 years, or both.

15 USCA § 1681q.

The strong emphasis by Congress throughout the FCRA to limit access to private credit information cannot be reconciled with the "procedural technicality" label claimed by Nationstar. If Vanamann can ultimately prove that Nationstar obtained her and the

- 5 -

class members' private credit information from a consumer reporting agency without a permissible purpose or written certification as required by the FCRA, they have sustained an injury in fact by Nationstar's invasion of their privacy.

Nationstar has thrown out a few different claims of a permissible purpose. Nationstar devotes most its attention to its contention that it had a business need under § 1681b(3)(F). See ECF Doc. 42 at p. 13-14. To make this defense work, Nationstar advocates that this provision should be interpreted broadly. Nationstar ignores controlling Ninth Circuit precedent that holds it is to be construed narrowly.

In *Mone v. Dranow*, 945 F.2d 306, 308 (9th Cir. 1991) the Defendant pulled the Plaintiff's credit reports to determine if they could collect from him if they succeeded on a counterclaim. The Defendant argued it was permissible as a "business need" under then § 1681b(3)(E) [which is now § 1681b (3)(F)].[2] The *Mone* Court flatly rejected that contention since the business need must relate to "an individual's *eligibility* for credit, insurance or employment" [and] [a] contrary construction of the statute would frustrate Congress' intent." Id. (emphasis added). Finding no connection to eligibility, the court reversed the District Court that had dismissed the complaint on the basis of finding a business need.

Nationstar's reliance on the business need is even farther removed than the *Mone* Defendant's interest in collectability of a judgment because Nationstar has no right to collect anything from Vanamann and is affirmatively barred from collecting any debt from Vanamann because of her discharge. Nationstar's use of her information for its behavioral scorecard to "predict performance of an individual in paying sums owed" when nothing can be collected from Vanamann does not meet the narrow permissible purpose under §1681b (3)(F).

---

[2] § 1681b(3)(E) read "(E) otherwise has a legitimate business need for the information in connection with a business transaction involving the consumer." §1681b(3)(F) now reads: "(F) otherwise has a legitimate business need for the information-- (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer continues to meet the terms of the account.".

- 6 -

### III.   THE *SPOKEO* CASE

Nationstar's motion references the decision in *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1549 (U.S.,2016) numerous times. In *Spokeo,* the United States Supreme Court did not rule that the plaintiff did not meet the injury in fact requirement for Article III standing. Instead, the case was remanded to the Ninth Circuit because it found that the Ninth Circuit failed to consider the "concrete" prong of an injury in fact analysis. *Spokeo* did not make any new law.

To have standing to bring a claim in federal court, the plaintiff must have suffered an injury in fact. This requirement has two components: the injury must be both (1) particularized and (2) concrete. "For an injury to be 'particularized', it must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548(2016)(quotation marks omitted). Generalized grievances will not do. The injury alleged by the plaintiff in *Spokeo*—that the defendant "violated his statutory rights" by failing to ensure the accuracy of information that it reported about him—is an example of an injury that is sufficiently individualized to satisfy this requirement. *Id.*[3] Here, unlike in *Spokeo*, the claim is based on Nationstar obtaining the personal credit information of the Plaintiff and the class members which establishes that particularization prong.

But particularization is only one half of the injury-in-fact inquiry. The injury must also be concrete— "that is, it must actually exist." *Id*. What does this mean? To help answer that question, the *Spokeo* Court distilled several "general principles" from its prior cases, without going beyond those cases. *Id*.at 1550.

The first is that, although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete injuries, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Id*. at 1549–50. The invasion of the Plaintiff's privacy is an intangible harm.

Second, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id*. at 1549. So if the

---

[3] Nationstar states "In fact, one of the claims brought by the *Spokeo* Plaintiff alleged that the defendant obtained his consumer report for an impermissible purpose (under § 1681b) just like Plaintiff here." Nationstar's Mem. at p. 2. The *Spokeo* claim was based on 15 U.S.C.A. §1681b(b) which addresses disclosures for employment purposes. That section has no application here. Vanamann's claims are based on §1681b(a).

- 7 -

"alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—or, put in fewer words, if "the common law permitted suit" in analogous circumstances—the plaintiff will have suffered a concrete injury that can be redressed by a federal court. *Id.*; see also *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (explaining that Article III encompasses "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process").

The harm created by impermissible access to a consumer report has a "close relationship to a [common law] harm." *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 2016 WL 2842447, at *7 (May 16, 2016). Accessing a consumer report without a permissible purpose would be similar to several common law torts that fall under the umbrella of invasion of privacy, such as the public disclosure of private facts or intrusion upon seclusion (in this case, intrusion on financial information). *Restatement (Second) of Torts* §§ 652A, 652B (setting forth elements), 652F, 652G (privileges) (1977). The tort of public disclosure of private facts has been applied to the publication of lists of debtors and the disclosure of information for purposes of solicitation. See, e.g., *Trammell v. Citizens News Co.*, 148 S.W.2d 708 (Ky. 1941) (notice posted in store and published in newspaper); *Brents v. Morgan*, 299 S.W. 967 (Ky. 1927) (five by eight feet sign listing debtors name in a store window); *Mason v. Williams Discount Ctr., Inc.*, 639 S.W.2d 836 (Mo. Ct. App. 1982) (listing plaintiff's name under a list headed "NO CHECKS" in plain view of customers at checkout counter states a claim).

The tort of intrusion has been applied to cases where the defendant has illegitimately accessed personal or confidential information. See, e.g., *Bray v. Cadle Co.*, 2010 WL 4053794 (S.D. Tex. Oct. 14, 2010) (improperly accessing bank records); *Kausch v. Wilmore*, 2009 WL 481346, at *4 (C.D. Cal. Feb. 24, 2009) (denying defendant's motion for summary judgment on an invasion of privacy claim arising from allegations that defendant had an impermissible purpose in obtaining plaintiff's credit report in relation to litigation); *Capitol Records, Inc. v. Weed*, 2008 WL 1820667 (D. Ariz. Apr. 27, 2008) (accessing hard disk and copying files without authorization is highly offensive; fact issue whether right to privacy waived by file-sharing); *Rodgers v. McCullough*, 296 F. Supp. 2d 895 (W.D. Tenn. 2003) (jury question whether conduct highly offensive where lawyer representing father in child custody matter improperly

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

obtained mother's credit report in attempt to show she was irresponsible, untruthful, and financially unstable); *Smith v. Bob Smith Chevrolet*, 275 F. Supp. 2d 808 (W.D. Ky. 2003) (unable to rule as matter of law that accessing credit report for improper purpose not highly offensive); *Pulla v. Amoco Oil Co.*, 882 F. Supp. 836 (S.D. Iowa 1994) (employer gained access to employee's credit card records, copied them, and put them in plaintiff's personnel file), *aff'd* in part, *rev'd* in part on other grounds, 72 F.3d 648 (8th Cir. 1995).

Invasion of privacy is a quintessential "harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," and thus is a legally cognizable injury for standing purposes. *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 2016 WL 2842447, at *7 (May 16, 2016). For more than a century, American courts have recognized that "[o]ne who invades the right of privacy of another is subject to liability for the resulting harm to the interests of the other." *Restatement (Second) of Torts* § 652A (1977); See *Id. cmt.* a (noting that "the existence of a right of privacy is now recognized in the great majority of the American jurisdictions").

In his seminal 1890 article on the right to privacy, Justice Brandeis explained even then that "what is ordinarily termed the common-law right to intellectual and artistic property are . . . but instances and applications of a general right to privacy." Samuel D. Warren & Louis D. Brandeis, *The Right to Privacy*, 4 Harv. L. Rev. 193, 198 (1890). At the turn of the century, American courts identified the right of privacy as "derived from natural law," and traced the concept back to Roman and early English legal traditions. *Pavesich v. New England Life Ins. Co.*, 50 S.E. 68, 70 (Ga. 1905).

Because harms to an individual's privacy have traditionally been regarded as a cognizable basis for suit, a consumer's privacy injury are sufficiently concrete "to constitute injury in fact." *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540, 2016 WL 2842447, at *8 (May 16, 2016).

But it should be noted that a plaintiff need not dig up a common-law analogue to establish a concrete injury, because Congress has the power (and is in fact "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law" and "Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none

- 9 -

existed before."; *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016).  See also *Massachusetts v. EPA*, 549 U.S. 497, 516 (2007) ("[Congressional] authorization is of critical importance to the standing inquiry: 'Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'").

Said differently, "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before, and I do not read the Court's opinion to suggest a contrary view. (citation omitted) In exercising this power, however, Congress must at the very least identify the injury it seeks to vindicate and relate the injury to the class of persons entitled to bring suit." (citation omitted) *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 580 (1992). (Kennedy, J., concurring). "As Government programs and policies become more complex and far reaching, we must be sensitive to the articulation of new rights of action that do not have clear analogs in our common-law tradition." *Id.*  If it does so, as it has under the FCRA, the plaintiff will be able to establish standing so long as she is part of that class of people. Hence Justice Scalia's observation that standing's "existence in a given case is largely within the control of Congress."  Antonin Scalia, *The Doctrine of Standing as an Essential Element of the Separation of Powers*, 17 Suffolk U. L. Rev. 881, 885 (1983).

Third, the Court in *Spokeo* emphasized that Congress can elevate even the violation of procedural rights to a concrete injury if they protect against an identified harm, and "a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." 136 S. Ct. at 1549. Thus, if Nationstar is correct in viewing the prohibition on obtaining private credit information as procedural (which it is not) it does mean that there is not a concrete injury. Of course, "a bare procedural violation, divorced from any concrete harm" identified by Congress, will not give rise to an Article III injury. *Id.* As the Court put it in an earlier case: "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right in vacuo—is insufficient to create Article III standing." *Summers v. Earth Island Institute*, 555 U.S. 4888, 496 (2009). But a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right. *Lujan*, 504 U.S. at 572 n.7. Here, the Plaintiff and the class each have a concrete interest in limiting who may access their private credit information.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

But, none of this analysis is new. And the Court in *Spokeo* did not even apply these principles to the facts before it, choosing instead to remand the case to the Ninth Circuit, whose previous analysis was "incomplete" because it had "overlooked" concreteness. 136 S. Ct. at 1545.

Vanamann previously submitted, in her opposition to Nationstar's motion to stay, that her claim alleges concrete harm because Nationstar invaded her privacy in violation of the FCRA. The dissemination of Plaintiff and the class members' private information is the type of intangible harm that *Spokeo* recognized when it said that the harm does not have to be tangible but may be intangible.

Ironically, one of the cases cited by Nationstar confirms Vanamann's position, that the dissemination of private credit information is a concrete injury. In *Galaria v. Nationwide Mut. Ins. Co.*, 998 F.Supp.2d 646, 658 (S.D. Ohio,2014) the Court held specifically "[the] Named Plaintiffs' allegation that their Personal Identifying Information was disseminated describes an injury sufficient to confer standing for their state law invasion of privacy claims."

Nationstar's contention that this case is similar to the claims before the Court in *Smith v. Ohio State University*, 2016 WL 3182675, (S.D.Ohio, 2016) ignores that in *Smith*, there was no dispute that the Plaintiffs gave authorization for the Defendant to obtain their private credit information. The complaint in *Smith* contended the Defendant violated the FCRA by including a release in the authorization form. On the basis of that claim, the Court found the claim was procedural. And, as shown by the *Galaria* decision, when there is unauthorized dissemination of private information, it was found to state a claim for invasion of privacy.

Nationstar also cites a trilogy of cases from Minnesota none of which addressed a motion to dismiss for lack of subject matter jurisdiction based on standing. In *Eaton v. Cent. Portfolio Control, Inc.*, 2014 U.S. Dist. LEXIS 170067 (D. Minn. Dec. 9, 2014) the parties did not raise standing as an issue nor did the court address it. The *Eaton* court also involved whether a debt was owed. There is no dispute here that Vanamann does not owe Nationstar a debt as a matter of law. 11 U.S.C. Sec. 524.

Similarly, the court in *Hutar v. Capital One Fin. Corp.*, 2015 U.S. Dist. LEXIS 106594, (D. Minn. July 27, 2015) neither the parties or the court addressed standing did not address standing. The court held that Plaintiff had submitted a credit application

which supported a permissible purpose. In *Saumweber v. Green Tree Servicing, LLC*, 2015 U.S. Dist. LEXIS 65175 (D. Minn. May 19, 2015) neither the parties or the court raised or addressed standing. [4]

### IV. THE DATA BREACH CASES NATIONSTAR CITES ARE DISTINGUISHABLE BECAUSE THEY INVOLVE VERY DIFFERENT FACTS AND CLAIMS FROM THE FACTS AND CLAIMS BEFORE THIS COURT.

Vanamann has not asserted a claim based on a data breach. She has asserted a claim because Nationstar obtained her private credit information without a permissible purpose in violation of the FCRA. There is no speculation here. Nationstar received Vanamann's private information. Its therefore clear, as shown below, that none of the data breach cases help Nationstar.

Yet, Nationstar provides quotes from data breach cases. These cases have a common and distinguishing legal and factual characteristics. To begin with, none of them involved any claim that the person who had the data initially had obtained the data improperly or that the person did not have a right to continued possession of the data. But here, in stark contrast, the claims against Nationstar are that it did not have a right to either access or possess the data. For this reason, the data breach cases offer no guidance on the issue before this court.

Second, the data breach claims relate to the release of data to third parties. The courts in these cases found there was no standing under the injury in fact requirement of Article III because there was only a showing of potential harm that was speculative and depended on whether a third party saw the data released by a breach or what a third party may or may not do with the data released by a breach. Here, there is no dispute that Nationstar saw Vanamann's information; it is not a claim based on what a third party may or may not do with her private credit information.

For instance, the Plaintiffs in *In re Zappos.com, Inc.,* 108 F.Supp.3d 949, 953 (D.Nev.,2015) "contend[ed] that their injury stems from an increased risk that they will become victims of identity theft or other fraudulent activities because their personal

---

[4] As Vanamann pointed out in her opposition to Nationstar's Motion for Partial Summary Judgment, the *Saumweber* decision relied on the decision in *Germain v. Bank of America, N.A.*, 2014 WL 5802018 (W.D.Wis. Nov.7, 2014) which for the reasons explained in her opposition is not persuasive. See Doc. 48 at Section E., p. 12-13.

- 12 -

1  information has been jeopardized. None of the Plaintiffs, however, allege that they have
2  suffered such harm as of yet." The breach occurred in 2012 and the motion was heard
3  three years later. Based on the span of three years and the lack of any proof of harm in
4  that period, the *Zappos* court found there was no immediate threat. 108 F.Supp.3d at
5  959("The years that have passed without Plaintiffs making a single allegation of theft or
6  fraud demonstrate that the risk is not immediate."). It was based on these facts, that the
7  *Zappos* court distinguished the case from the Ninth Circuit's decision in *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1143 (9th Cir. 2010).

In *Krottner,* a lap top containing personal information about Starbuck's employees was stolen and two employees sued asserting claims for negligence and breach of contract. The District Court dismissed their claims. The Ninth Circuit reversed holding "[i]f a plaintiff faces "a credible threat of harm," *(citation omitted)* and that harm is "both real and immediate, not conjectural or hypothetical," *(citation omitted)* the plaintiff has met the injury-in-fact requirement for standing under Article III. Plaintiffs– Appellants have alleged a credible threat of real and immediate harm stemming from the theft of a laptop containing their unencrypted personal data." In contrast to *Zappos*, the injury to Vanamann has already occurred. Vanamann has been harmed by Nationstar obtaining her private credit information.  Nationstar has invaded her privacy. A claim that Congress provided remedies for.

In other data breach cases where consumers' personal information has been obtained by others not entitled to access or possess the private information as  a  result of  a  data  security  incident  or  data  breach  by  criminal  intrusion,  courts  have concluded that "customers should not have to wait until hackers commit identity theft  or  credit-card  fraud  in  order  to  give  the  class  standing[.]" See *Remijas v. Neiman Marcus*, 794 F.3d 688, 693 (7th Cir. 2015) (citing Clapper,133 S. Ct. at 1147); see also *In re Adobe Sys., Inc. Privacy Litig*., 66 F. Supp. 3d 1197, 1214 (N.D. Cal. 2014).

The Seventh Circuit applied a common sense approach and asked "Why else would hackers break into a store's database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities." *Neiman Marcus*, 794 F.3d at 693. See also, *Adobe*, 66 F. Supp. 3d at 1214 ("[T]he risk that Plaintiffs' personal data will be misused by the hackers who breached Adobe's network is immediate and very real."). Recognizing that

- 13 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

such harms "can occur long after a data breach," the courts in *Neiman Marcus* and *Adobe* held that it is "plausible to infer that the plaintiffs have shown a substantial risk of harm" from the data breach, and that such allegations of future injury satisfy Article III. *Neiman Marcus*, 794 F.3d at 693; *Adobe*, 66 F. Supp. 3d at 1215 ("[T]he danger that Plaintiffs' stolen data will be subject to misuse can plausibly be described as 'certainly impending.'")

*In re Science Applications International Corp. (SAIC) Backup Tape Data Theft Litigation*, 45 F.Supp.3d 14, 25-26 (D.D.C., 2014) was another data breach case. The court determined there was a lack of standing because plaintiffs' claims relied on alleged future harm from a third party. The Court explained "[c]ourts for this reason are reluctant to grant standing where the alleged future injury depends on the actions of an independent third party. See *Clapper*, 133 S.Ct. at 1150 (expressing "our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors"). Vanamann's claims are not predicated on the actions of any third party. Vanamann's claims are based on Nationstar's actions.

For these same reasons, the claims based on release of data in *Galaria v. Nationwide Mut. Ins. Co.*, 998 F.Supp.2d 646, 658 (S.D.Ohio,2014) were found to be too speculative because "...any loss of privacy depends on the independent actions of third parties...". Again, Vanamann asserts claims against Nationstar, not any third parties.

Similarly, in *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (C.A.3 (N.J.),2011) another data breach case, the Court ultimately concluded that the alleged harm was too speculative and held:

> Appellants' contentions rely on speculation that the hacker: (1) read, copied, and understood their personal information; (2) intends to commit future criminal acts by misusing the information; and (3) is able to use such information to the detriment of Appellants by making unauthorized transactions in Appellants' names. Unless and until these conjectures come true, Appellants have not suffered any injury; there has been no misuse of the information, and thus, no harm.")

The same is true of the decision in *Khan v. Children's National Health System*, 2016 WL 2946165 (D. Md., 2016). In fact, the *Khan* court specifically limited its holding to data breach cases stating:

> The Court therefore concludes that in the data breach context, plaintiffs have properly alleged an injury in fact arising from increased risk of identity theft if they put forth facts that provide either (1) actual examples of the use of the fruits of the data breach for identity theft, even if involving other victims; or (2) a clear

- 14 -

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

>  indication that the data breach was for the purpose of using the plaintiffs' personal data to engage in identity fraud.

2016 WL 2946165, at *5

The remaining two cases, *National Council of La Raza v. Gonzales*, 468 F.Supp.2d 429, 444 (E.D.N.Y.,2007) and *Cahen v. Toyota Motor Corporation,* 2015 WL 7566806, at *1 (N.D.Cal., 2015) involved the potential hacking of information being stored by the Defendants. In Gonzalez, the court observed "[t]o put a finer point on the deficiency of their allegations, Plaintiffs do not allege that any unauthorized party has actually accessed the records of any plaintiff member listed in the NCIC database.".

In *Cahen v. Toyota Motor Corporation,* 2015 WL 7566806, at *1 (N.D.Cal., 2015) that claim was dismissed by the court because it was based on allegations "that defendants have equipped their vehicles with computer technology that is susceptible to being hacked by third parties." It is true that the Court in the same order also dismissed privacy claims asserted by the Plaintiffs, however, that dismissal was with leave to amend. *Id*.  This case does not involve technology susceptible to being hacked. This case involves Nationstar actually obtaining Vanamann's private financial information, *not* that it could have potentially obtained her private credit information.

### V. THE CLASS HAS THE SAME CLAIM AND ENTITLEMENT TO MINIMUM STATUTORY DAMAGES UNDER THE FCRA AS VANAMANN

Nationstar relies on its arguments relating to Vanamann's claim to then erroneously claim the class members also lack standing. The response to Nationstar's arguments on these issues are set forth above.

In addition, Nationstar also raises other issues regarding the class. For instance, Nationstar points to the decision by the U.S. Supreme Court in *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) suggesting that it controls in this situation. In *O'Shea* the plaintiffs filed suit against a number of different defendants, including a magistrate and an associate judge.

> In the complaint that began this action, the sole allegations of injury are that petitioners 'have engaged in and continue to engage in, a pattern and practice of conduct . . . all of which has deprived and continues to deprive plaintiffs and members of their class of their' constitutional rights and, again, that petitioners 'have denied and continue to deny to plaintiffs and members of their class their constitutional rights' by illegal bond-setting, sentencing, and jury-fee practices. None of the named plaintiffs is identified as himself having suffered any injury in

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

the manner specified. In sharp contrast to the claim for relief against the State's Attorney where specific instances of misconduct with respect to particular individuals are alleged, the claim against petitioners alleges injury in only the most general terms.

The only petitioners to the Supreme Court were the magistrate and an associate judge. The court found that there were no instances of misconduct alleged against these two petitioners. In contrast, Vanamann has alleged specific misconduct on the part of Nationstar.

Nationstar also suggests that the class may not be entitled to statutory damages. Congress has provided that Nationstar "is liable to that consumer in an amount equal to the sum of -- (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater." Nationstar recognizes that Congress' decision to provide for minimum damages based on its alleged wrongful actions negates its arguments that Plaintiff or the class members must make the showings it lists to be entitled to statutory damages under the FCRA. The FCRA appropriately focuses on Nationstar's conduct in determining liability.

Surprisingly, Nationstar attempts to evade this conclusion by suggesting the statutory damages are discretionary under the FCRA. The sole support offered by Nationstar's suggestion is the decision in *Campbell v Facebook, Inc.*, 2016 WL 2897936 (N.D.Cal., 2016) However, the *Campbell* case did not involve any claims for statutory damages under the FCRA.

The *Campbell* court addressed claims under the Electronic Communications Privacy Act (ECPA). The Campbell concluded that the statutory damages allowed by the ECPA:

> makes the decision of whether or not to award damages subject to the court's discretion." DirecTV, Inc. v. Huynh, 2005 WL 5864467, at *8 (N.D.Cal. May 31, 2005) (aff'd by 503 F.3d 847 (9th Cir.2007)). Such discretion is clear from the statute, which was amended in 1986 to state that the court "may" award damages, rather than stating that it "shall" award damages. However, the court's discretion is limited to deciding whether to "either award the statutory sum or nothing at all," it "may not award any amount between those two figures." Id. at *6.

*Campbell*, 2016 WL 2897936, at *14

The FCRA makes clear that the person who violates the FCRA "*is liable* to the consumer" (emphasis added). The *Campbell* decision if anything only confirms that the FCRA damages are not discretionary since Congress makes statutory damages

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

discretionary by the using "may" as it did under the ECPA.  Congress did not use "may" in 15 U.S.C.A. § 1681n.

Nationstar, finally contends that the class definition is too broad. Interestingly, Nationstar's opposition to Plaintiff's class certification motion contended the definition was too limiting and created a "fail-safe class". Nationstar cannot argue the same issue both ways. Besides, this issue does not impact whether there is standing to assert a claim under Article III. As explained above, if Nationstar obtained Vanamann's or any class members' private credit information from a consumer reporting agency it states a statutory claim under the FCRA that has a common law analogue: invasion of privacy.

## CONCLUSION

The *Spokeo* decision did not change the law. It remanded the action because the Ninth Circuit did not analyze whether there was concrete injury from the statutory violation. The Plaintiff has suffered a particularized and concrete injury in fact when Nationstar chose to invade her privacy by improperly accessing her private credit information. Nationstar also invaded the privacy of the proposed class members. Each have the right to the minimum remedies that Congress determined was appropriate. The motion should be denied.

Respectfully submitted,

/s/ Christopher P. Burke
Christopher P. Burke, Esq.
Nevada Bar No. 004093
218 S. Maryland Parkway.
Las Vegas, NV 89101
(702) 385-8987
Email: atty@cburke.lvcoxmail.com

Scott C. Borison
(Pro Hac Vice)
Legg Law Firm, LLP
1900 S. Norfolk Rd. Suite 350
San Mateo CA 94403
Borison@legglaw.com
 (301) 620-1016
Fax: (301) 620-1018
Borison@legglaw.com

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 27, 2016, I served a true and correct copy of this document by the following means to the persons listed below by E mail to Defendant's counsel.

/s/ Christopher P. Burke, Esq.

Kravitz, Schnitzer & Johnson, CHTD.
Gary E. Svhnitzer, Esq.
8985 S. Eastern Ave. Suite 200
Las Vegas, Nevada 89123
gschnitzer@ksjattorneys.com