1
2
3
4
5
6
7
8
9

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

10  KIM VANAMAN, individually and on
    behalf of all other similarly situated.

11          Plaintiff,                              Case No. 2:15-CV-00906-KJD-NJK

12  v.                                              **ORDER**

13  NATIONSTAR MORTGAGE, LLC,

14          Defendant.

15

16          Presently before the Court is Defendant's Motion for Summary Judgment (#41). Plaintiff

17  filed a response in opposition (#48) to which Defendant replied (#53).

18  I. Facts

19          On or about December 22, 2009, Plaintiff filed a Chapter 13 voluntary bankruptcy petition. In

20  Schedule D of her petition, Plaintiff listed Bank of America Home Loan Servicing ("Bank of

21  America") as the first mortgage creditor on her mortgage loan for her primary residence at 7593

22  Slipstream Street, Las Vegas, NV 89139 ("the Slipstream property"). Her case was voluntarily

23  converted to Chapter 7 on December 11, 2012.

24          On May 1, 2013, the bankruptcy court entered an order discharging Debtor, Bank of America,

25  in Plaintiff's Chapter 7 proceeding. On December 1, 2013, Bank of America transferred servicing of

26  Plaintiff's mortgage loan to Nationstar. On December 13, 2013, the bankruptcy court entered an

order approving sale of the Slipstream property pursuant to § 363(b) of the Bankruptcy Code subject to all existing liens and encumbrances, including the lien secured by the mortgage loan serviced by Nationstar.

Nationstar, as servicer, obtained Plaintiff's consumer credit report for account review purposes on six occasions between January 2014 and August 2015. On each occasion, the lien still attached to the Slipstream property and a balance still existed on the mortgage account.

Nationstar, in the regular course of business, performs "soft pulls" of consumer reports for its mortgage accounts for a variety of account maintenance reasons. The soft pull populates approximately 150 generic credit attributes to Nationstar's files. Data obtained, included, but was not limited to: summaries of outstanding credit balances, addresses, alerts for identity theft or fraud, information about consumer status such as whether she is in the military, incarcerated, divorced, deceased, bankrupt or has tax liens or other judgments against her.

A soft pull does not provide individual account or tradeline information found on a full consumer report obtained for a "hard pull" for the extension of credit. The soft pull helps the mortgage servicer determine the consumer's status and predict the consumer's future behavior. Nationstar regularly, usually quarterly, pulls consumer information for account review and servicing reasons. An account remains "active" or "open" in Nationstar's internal systems and servicing platform until (1) the account balance has been "zeroed", including escrow balances and unpaid principal balances, and (2) the final tax forms required for liquidation or servicing transfer have been completed.

Nationstar has continuing contractual obligations as the mortgage servicer.  The life cycle of servicing includes servicing of accounts for Nationstar customers, including those current with payments, those in default, bankrupt customers, escrow customers, customers seeking modification and liquidation customers. Duties and obligations included: property preservation and eviction; tax and escrow reporting via 1098 and 1099 forms; compliance with loan programs such as the Home Affordable Modification Program ("HAMP"); evaluating customers for loan modification; cash-for-

keys settlements; accepting deeds-in-lieu of foreclosure; short sales; and preventing identity theft and fraud.

Bankruptcy discharge had only a limited effect on Nationstar's on-going servicing requirements. Discharge did not affect whether an account was active, open or existed within the Nationstar system. A remaining balance on the Nationstar account was still secured by a lien on the Slipstream property serving as collateral. The soft pulls helped to provide Nationstar information necessary to proceed with the account post-discharge. Nationstar had to determine how a consumer would proceed: stay in the property and continue to make payments; attempt loan modification; accept a loss mitigation alternative; or subject the property to foreclosure.

Plaintiff filed the present complaint asserting a single claim under the Fair Credit Reporting Act ("FCRA"): that Nationstar's account review inquiries, or "soft pulls" lacked any permissible purpose after the bankruptcy discharge. See 15 U.S.C. § 1681b(f). After discovery, Defendant filed the present motion for summary judgment asserting that as a matter of law, Plaintiff could not show that Defendant's actions were "willfull."

II.  Standard for Summary Judgment

Summary judgment may be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  See Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  See Celotex, 477 U.S. at 323.  The burden then shifts to the nonmoving party to set forth specific facts demonstrating a genuine factual issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

All justifiable inferences must be viewed in the light must favorable to the nonmoving party. See Matsushita, 475 U.S. at 587.  However, the nonmoving party may not rest upon the mere allegations or denials of his or her pleadings, but he or she must produce specific facts, by affidavit

1   or other evidentiary materials as provided by Rule 56(e), showing there is a genuine issue for trial.

2   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The court need only resolve factual

3   issues of controversy in favor of the non-moving party where the facts specifically averred by that

4   party contradict facts specifically averred by the movant.  See Lujan v. Nat'l Wildlife Fed'n, 497

5   U.S. 871, 888 (1990); see also Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345

6   (9th Cir. 1995) (stating that conclusory or speculative testimony is insufficient to raise a genuine

7   issue of fact to defeat summary judgment).  Evidence must be concrete and cannot rely on "mere

8   speculation, conjecture, or fantasy.  O.S.C. Corp. v. Apple Computer, Inc., 792 F.2d 1464, 1467 (9th

9   Cir. 1986). "[U]ncorroborated and self-serving testimony," without more, will not create a "genuine

10  issue" of material fact precluding summary judgment. Villiarimo v. Aloha Island Air, Inc., 281 F.3d

11  1054, 1061 (9th Cir. 2002).

12      Summary judgment shall be entered "against a party who fails to make a showing sufficient

13  to establish the existence of an element essential to that party's case, and on which that party will

14  bear the burden of proof at trial."  Celotex, 477 U.S. at 322.  Summary judgment shall not be granted

15  if a reasonable jury could return a verdict for the nonmoving party.  See Anderson, 477 U.S. at 248.

16  III. Analysis

17      A. Fair Credit Reporting Act.

18      Congress enacted the FCRA in 1970 in response to concerns about corporations' increasingly

19  sophisticated use of consumers' personal information in making credit and other decisions. Syed v.

20  M-I, LLC, 846 F.3d 1034, 1037 (9th Cir. 2017); Fair Credit Reporting Act of 1970, Pub. L. 91–508,

21  § 602, 84 Stat. 1114, 1128. Specifically, Congress recognized the need to "ensure fair and accurate

22  credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco

23  Ins. Co. v. Burr, 551 U.S. 47, 52 (2007). Congress thus required the use of reasonable procedures in

24  procuring and using a "consumer report," defined as:

25          any written, oral, or other communication of any information by a
            consumer reporting agency bearing on a consumer's credit worthiness,

26          credit standing, credit capacity, character, general reputation, personal

4

characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under [the statute].

15 U.S.C. §1681a(d).

The Act provides civil liability for both willful violations, id. § 1681n, and negligent violations, id. § 1681o.  The decision of the Supreme Court in Safeco governs definition of a willful violation of the Act. To prove a willful violation, a consumer must prove that a defendant either knowingly or recklessly violated the requirements of the Act. Safeco, 551 U.S. at 56-7. To prove a reckless violation, a consumer must establish that the action "is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." Id. at 69. An interpretation that favors the company must be "objectively unreasonable" under either the text of the Act or "guidance from the courts of appeals or the Federal Trade Commission that might have warned it away from the view it took." Id. at 70; Levine v. World Fin. Network Nat. Bank, 554 F.3d 1314 (11th Cir. 2009).[1]

Unlike Syed, which found that the portion of the act that made it illegal to procure a credit report after including a liability waiver in the same document as a statutorily mandated disclosure[2] was unambiguous, courts have found that the portion of the Act relied upon by Vanamann to establish a claim, 15 U.S.C. § 1681b(a)(3)(A), is "far from pellucid[.]" Levine, 554 F.3d at 1318 (internal quotations omitted). Under § 1681b(a)(3)(A), a consumer report may be sold when the seller "has reason to believe [that the buyer] intends to use the information in connection with a

---

[1]To the extent that Plaintiff relies upon staff opinion letters from the FTC, the Supreme Court expressly rejected such letters as "authoritative guidance" finding that "an informal staff opinion . . . [was] not binding on the commission." Safeco, 551 U.S. at 70, n.19.

[2]See 15 U.S.C. § 1681(b)(2)(A).

5

credit transaction involving the consumer . . . and involving the . . . review or collection of an

account[.]" Here, there is no indication that the statute limited approved use only to open accounts.

> "Where, as here, the statutory text and relevant court and agency guidance
> allow for more than one reasonable interpretation, it would defy history and
> current thinking to treat a defendant who merely adopts one such
> interpretation as a knowing or reckless violator. Congress could not have
> intended such a result for those who followed an interpretation that could
> reasonably have found support in the courts, whatever their subjective
> intent may have been."

Safeco, 551 U.S. at 70, n.20.  Further, any evidence of "subjective bad faith" is irrelevant. Id.; see

also Levine, 554 F.3d at 1319.  Plaintiff's entire action is predicated upon her belief that §§

1681b(a)(3)(A), (F) do not apply to debt that has been discharged in bankruptcy.

However, after discharge, the consumer is no longer indebted on the loan, but is indebted to

the extent of the collateral, the Slipstream property. See 11 U.S.C. § 726-27. Plaintiff asserts that

Nationstar's soft pulls were not permissible, under § 1681b(a)(3)(A) because "there was no credit

transaction," and therefore " . . . review . . . of an account ..." cannot be used to justify the pull.

However, the mortgage loan and particularly, the continuing lien, is the credit transaction for which

an *in rem* obligation exists, even after discharge. See Johnson v. Home State Bank, 501 U.S. 78, 84

(1991)("a bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action

against the debtor *in personam* – while leaving intact another – namely, an against the debtor *in*

*rem*."). "[T]here can be no doubt that the surviving mortgage interest corresponds to an enforceable

obligation of the debtor." Id. Thus, rather than create a limitation on access to Plaintiff's credit

information, post-discharge, § 1681b(a)(3) provides broad discretion for Nationstar's access to "soft

pull" information for "review or collection of an account" or any other "legitimate business need[.]"

15 U.S.C. §§ 1681b(a)(3)(A),(F).

Additionally, Plaintiff has pointed to no authority, circuit court or otherwise, demonstrating

that it is objectively unreasonable to interpret the FCRA as prohibiting a creditor from obtaining a

consumer's credit report after a consumer's account is closed. <u>See</u> <u>Safeco</u>, 551 U.S. at 69-70.[3] In fact, the Eleventh Circuit held in <u>Levine</u> that it is not objectively unreasonable to interpret the FCRA as permitting the sale of a consumer credit report to a creditor for "account review" purposes after the consumer has closed their account with that creditor. <u>Levine</u>, 554 F.3d at 1318-19 (noting that the FCRA does not distinguish between open and closed accounts); <u>see also</u>, <u>Wilting v. Progressive County Mut. Ins. Co.</u>, 227 F.3d 474, 476 (5th Cir. 2000)(neither the statute or FTC commentary suggest that a report may only be permissibly obtained during particular points in a credit relationship); <u>Saumweber v. Greentree Servicing, LLC</u>, 2015 WL 2381131 (D. Minn. May 19, 2015); <u>Germain v. Bank of Am.</u>, 2014 WL 5802018 (W.D. Wisc. Nov. 7, 2014); <u>Banga v. Experian Info. Solutions</u>, 2013 WL 5539690 (N.D. Cal. September 30, 2013); <u>Godby v. Wells Fargo</u>, 559 F.Supp.2d 934, 944 (S.D. Ohio 2008).

Unlike the defendant in <u>Syed</u>, Nationstar did not run an "unjustifiably high risk of violating the statute[,]" when it conducted soft pulls of Plaintiff's credit report after the Chapter 7 bankruptcy discharge. <u>See</u> <u>Syed</u>, 846 F.3d at 1046. Whether a FCRA violation may give rise to a claim for statutory damages can be analogized to whether government employees may be held personally liable in suits for damages. <u>See</u> <u>Safeco</u>, 551 U.S. at 70. In the qualified immunity context, the Ninth Circuit "has held that when an officer's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established." <u>See</u> <u>Syed</u>, 846 F.3d at 1045. Here, the soft pulls by Nationstar were not so patently violative of Plaintiff's rights as to give rise to a claim for statutory damages. That conclusion is only buttressed by the fact that the Eleventh Circuit and many district courts have come to the conclusion that the statute is "less than pellucid" and that §§1681b(a)(3)(A), (F) apply to both open

---

[3] The case that Plaintiff did cite, <u>Pintos v. Pac. Creditors Assoc.</u>, 605 F.3d 665 (9th Cir. 2009), is completely distinguishable, because debtor in that case did not voluntarily enter into a credit agreement, but became subject to a deficiency action after her unregistered vehicle was towed and impounded. Here, Plaintiff voluntarily entered into her mortgage loan.

1  and closed consumer accounts. Therefore, the Court grants Defendant's motion for summary

2  judgment.

3  IV. Conclusion

4       Accordingly, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment

5  (#41) is **GRANTED**;

6       IT IS FURTHER ORDERED that all other outstanding motions are **DENIED as moot**;

7       IT IS FURTHER ORDERED that the Clerk of the Court enter **JUDGMENT** for Defendant

8  and against Plaintiff.

9       DATED this 22nd day of March 2017.

10

11

12  _____

13  Kent J. Dawson
   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26